LARA HRUSKA, WSBA No. 46531
SYDNEY A. BAY, WSBA No. 56908
Cedar Law PLLC
113 Cherry Street, PMB 96563
Seattle, WA 98104-2205
T: (206) 607-8277
F: (206) 237-9101
E: lara@cedarlawpllc.com
E: sydney@cedarlawpllc.com
Attorneys for Plaintiffs

## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| KARLA BOE, AND GABRIEL BOE, individually, and in their capacities as parents and guardians of minor student, O.B., and GRACIE BOE, individually. | Case No.  2:23-cv-00319 **COMPLAINT FOR DAMAGES** |
| Plaintiffs, | JURY DEMAND |
| v. | |
| MEAD SCHOOL DISTRICT, | |
| Defendant. | |

Plaintiffs, by and through their attorneys, allege as follows:

## I.    PRELIMINARY STATEMENT

1.1    This is a disability discrimination case brought by student O.B. by and

through his parents Karla and Gabriel Boe (at times, "Parents") against Mead School

District ("Defendant" or "District"). This is also an action for damages as a result of

COMPLAINT FOR DAMAGES AND JURY
DEMAND – 1

the District's negligence brought by O.B., his Parents, and his sister, Gracie Boe, for negligent infliction of emotional distress when she witnessed her brother's horrible injury immediately after it happened and experienced significant emotional distress as a result.

1.2     As a student with Attention-deficit/hyperactivity disorder, O.B. is an individual with a disability under Section 504 and Title II of the Americans with Disabilities Act (42 U.S.C. § 12131(2)) of which has led to academic deficits due to his difficulty sustaining attention, inability to follow through on instructions and assignments, and failure to complete or timely turn in class assignments.

1.3     The District had a duty to evaluate O.B. to determine the extent of his disability and support his access to a free and appropriate public education. Instead, the District refused to provide reasonable accommodations and instead created a volatile environment, exacerbating O.B.'s impulsivity and emotional instability. As a result of his crushing anxiety about school and feelings of failure, O.B. impulsively attempted to take his own life and ended up permanently blinding himself.

1.4     The severe mental and emotional anguish O.B. experienced as a direct result of the District's failures was foreseeable. The District was aware of O.B.'s diagnoses and through repeated advocacy from O.B., his Parents, his psychiatrist, and his teachers. The District knew O.B. was not accessing his education and that a

COMPLAINT FOR DAMAGES AND JURY
DEMAND – 2

**Cedar Law PLLC**
113 Cherry Street PMB 9564
Seattle, WA 98104-2205
(206) 607-8277
Fax (206) 237-9109

504 Plan would have provided the support he needed. Yet, the District failed to act.

1.5    The level of anxiety that school caused O.B., with no support, became too great for him. On the evening of Sunday, January 9, 2022, in trepidation of his return to school the next morning, O.B. was so overwhelmed that he attempted to take his own life. The resulting gunshot wound to the head severed his ocular nerve and left him permanently blind.

1.6    Now, Plaintiff, O.B., by and through his parents and attorneys, brings this action against Defendant for violations of his rights under Section 504 of the Rehabilitation Act of 1973 and Title II of the Americans with Disabilities Act (42 U.S.C. § 12131(2)).

1.7    Plaintiffs also bring claims under Washington state law to include Negligence, Bystander Negligent Infliction of Emotional Distress, and Loss of Consortium.

## II. PARTIES

2.1    Plaintiff O.B. is currently 15 years old and lives with his parents in Colbert, Washington. O.B. is Blind and diagnosed with Attention Deficit Hyperactivity Disorder (ADHD).

2.2    O.B. qualifies as an "individual with a disability" within the meaning of Section 504 and Title II of the Americans with Disabilities Act (42 U.S.C. §

COMPLAINT FOR DAMAGES AND JURY
DEMAND – 3

12131(2)), in that he has a mental impairment that substantially limits his ability to perform one or more major life activities and who, with or without a reasonable modification of educational program requirements, meets the essential eligibility requirement for the receipt of special education and other services provided by the District.

2.3    Plaintiff Gracie Boe is O.B.'s sister. Gracie is currently 18 years old and is a Washington State resident.

2.4    Plaintiffs Karla Boe and Gabriel Boe are the parents (hereinafter "Parents") of O.B. and are Washington State residents.

2.5    At all material times the Plaintiffs were all residents of the city of Colbert, in the County of Spokane, State of Washington.

2.6    Defendant Mead School District ("Defendant" or "District") is a public educational institution located in the County of Spokane, City of Mead, State of Washington.

2.7    At the time of the events complained herein, O.B. was a student attending Mountainside Middle School within the District.

2.8    The District is a recipient of federal funding from the U.S. Department of Education under Section 504 of the Rehabilitation Act of 1973 ("Section 504") and is a "public entity" as defined by the Americans with Disabilities Act, Act, 42

COMPLAINT FOR DAMAGES AND JURY
DEMAND – 4

**Cedar Law PLLC**
113 Cherry Street PMB 9564
Seattle, WA 98104-2205
(206) 607-8277
Fax (206) 237-9109

1
2
3

U.S.C. §12101 et seq., ("ADA"), and is a Washington "public school" under Revised Code Washington Section 28A.150.010.

### III.    JURISDICTION AND VENUE

3.1    This case arises under Washington state law, the Washington state Constitution, federal law, and the federal Constitution.

3.2    This Court has personal jurisdiction over the parties and subject matter jurisdiction for the claims in this complaint pursuant to jurisdiction under 28 U.S.C. § 1331. This Court has supplemental jurisdiction over Washington state claims under 28 U.S.C. § 1367(a).

3.3    Jurisdiction is also proper in this Court pursuant to RCW 4.96.020, because Plaintiffs served tort claims on the Mead School District and more than sixty days have passed.

3.4    Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because both Parties are located here within the Eastern District of Washington, and the events giving rise to this Complaint occurred within the Eastern District of Washington.

3.5    Pursuant to RCW 4.96.020, more than 60 days have passed since Plaintiffs presented a completed tort claim to Defendant District on May 3, 2023 in advance of this lawsuit.

COMPLAINT FOR DAMAGES AND JURY
DEMAND – 5

**Cedar Law PLLC**
113 Cherry Street PMB 9564
Seattle, WA 98104-2205
(206) 607-8277
Fax (206) 237-9109

### III.    FACTUAL ALLEGATIONS

4.1    Plaintiff O.B. is diagnosed with Attention-deficit/hyperactivity disorder (ADHD). O.B.'s ADHD has resulted in academic deficits linked to difficulty sustaining attention, following through on instructions and assignments, and failure to complete or timely turn in class assignments. He has also been diagnosed with unspecified anxiety disorder and has exhibited signs and symptoms of depression. He is also now blind as a result of Defendant's acts and omissions.

4.2    O.B. was first diagnosed with ADHD in 2014. He received medication management and counseling to manage his diagnosis.

4.3    In November 2019, O.B. and his family moved into the Mead School District ("Defendant" or "District"). O.B. attended 6th grade at Colbert Elementary School for the remainder of the 2019-2020 school year.

4.4    When O.B. entered the District, his Parents informed the District that O.B. had ADHD. The District also obtained records from O.B.'s previous district in Ellensburg which revealed that O.B. was diagnosed with ADHD and that he was taking medication for ADHD.

4.5    When his mother enrolled O.B. into the District, she expressly asked for a 504-learning-support-plan ("504 plan") to help O.B. access his education in the new district.

COMPLAINT FOR DAMAGES AND JURY
DEMAND – 6

**Cedar Law PLLC**
113 Cherry Street PMB 9564
Seattle, WA 98104-2205
(206) 607-8277
Fax (206) 237-9109

4.6     His mother properly understood from O.B.'s prior school district psychologist that a 504 plan is a formal document issued by the District and shared with teachers so that the student's educational program can be appropriately accommodated and modified to support his disability through accommodations and modifications to the general education program and to prevent disability-related discrimination in the school setting.

4.7     But despite the mother's request, the District did not develop a 504 plan to address O.B.'s ADHD-related struggles at school.

4.8     Due to O.B.'s ongoing disability-related academic struggles, in May 2020, the parents had O.B. evaluated by Dr. Thomas Beck at the Winston Center, an ADHD & Dyslexia Specialty Center in Spokane, Washington. Dr. Beck confirmed O.B.'s ADHD diagnosis with predominantly inattentive presentation and diagnosed O.B. with an unspecified anxiety disorder. O.B.'s parents provided the complete evaluation to the District and reiterated their request for a 504 plan to provide O.B. with school-based supports.

4.9     Since completing the evaluation, Dr. Beck has been O.B.'s treating psychiatrist and has overseen the medication O.B. takes to manage his ADHD.

4.10    In September 2020, O.B. started 7th grade at Mountainside Middle School within the District ("Mountainside"). The school year started virtually due to

COMPLAINT FOR DAMAGES AND JURY
DEMAND – 7

the COVID-19 pandemic. O.B. had trouble in multiple classes – struggling to comprehend the assignments and instructions and failing to complete assignments on time or at all. His academic problems exacerbated his anxiety disorder and contributed to feelings of frustration and hopelessness.

4.11    The Parents witnessed their son struggle and were concerned he was not getting the requested 504 supports. The Parents strongly advocated on O.B.'s behalf. They communicated with his teachers and to the school administration about their concerns regarding O.B.'s academic struggles and repeated request for supports.

4.12    Even O.B.'s teachers expressed concerns to the District that O.B. needed disability-related accommodations, because he was struggling academically as a result of his ADHD. For example:

- On February 19, 2021, O.B.'s 7th grade science teacher, Benjamin Hunter, emailed the Parents because O.B. needed intervention time for his science class.

- On O.B.'s February 22, 2021 report card, his teachers expressed concern regarding O.B.'s ability to succeed academically. His English teacher, Hannah Webley commented that O.B. turned in low quality or incomplete work, that he did not engage over Zoom,

COMPLAINT FOR DAMAGES AND JURY
DEMAND – 8

or use class time productively, and that missing and incomplete assignments were negatively impacting his grades. His science teacher, Mr. Hunter, likwise noted that O.B. failed to use class time productively. His Health/Physical Education teacher, Melissa Braddock-Mather, said O.B. was not turning in his activity logs. His Social Studies teacher, Kelly Creasey, commented that O.B. was frequently absent from class and she needed O.B. to communicate with her more and to get more involved in actively learning in class.

- On March 5, 2021, O.B.'s STEM teacher, Zoe Taylor, emailed the Parents that O.B. needed intervention for her class.

4.13   Despite this near unanimity amongst his teachers that O.B. was not performing well at school, the District continued to refuse to develop and implement a 504 plan. As a result, O.B. continued to struggle.

4.14   During a March 15, 2021 meeting with O.B., Dr. Beck noted that O.B. was not doing well in school and that O.B.'s mood was all over the place. O.B. reported to Dr. Beck that the COVID-related changes at school were a huge stressor for him; that he had low energy; and that was struggling with memory problems. Plaintiff Karla Boe reported to Dr. Beck that O.B. was highly emotional and struggling in school.

COMPLAINT FOR DAMAGES AND JURY
DEMAND – 9

**Cedar Law PLLC**
113 Cherry Street PMB 9564
Seattle, WA 98104-2205
(206) 607-8277
Fax (206) 237-9109

4.15   On March 16, 2021, Dr. Beck wrote a letter unequivocally requesting that the District provide O.B. with a Section 504 learning support plan to assist O.B. because his ADHD was impacting his ability in the academic setting. In the letter, Dr. Beck provided suggested accommodations that would assist O.B. with executive functioning at school. The suggested accommodations included providing O.B. with a quiet low-distraction environment, extended times on assignments, providing O.B. with checklists or graphic organizers, providing him class notes/written assignment lists, chunking instructions, always allowing O.B. access to assistive technology, and allowing breaks as needed.

4.16   On March 18, 2021, an email signed by O.B.'s core teachers (science, social studies, English, and math) cited concerns about O.B.'s performance and engagement in classes, noting that O.B. had multiple Ds and three Fs for overall quarter grades. The Parents responded to the email that O.B.'s psychiatrist was recommending a 504 plan, and the Parents were working with O.B. to assist him with classes. The Parents attached and redistributed Dr. Beck's March 16, 2021 letter requesting a 504 plan.

4.17   That same day, the Parents emailed O.B.'s English teacher, Hannah Webley, about academic supports for O.B. In terms of providing O.B. with assistance, Ms. Webley stated that she would ask in the group setting for people who

COMPLAINT FOR DAMAGES AND JURY
DEMAND – 10

**Cedar Law PLLC**
113 Cherry Street PMB 9564
Seattle, WA 98104-2205
(206) 607-8277
Fax (206) 237-9109

needed help but given that the class was not conducted in-person, it was difficult to check in with him individually.

4.18    The Parents also emailed the school counselor, Todd Johnson, on March 18, 2021. Again, they formally requested a 504 plan and raised concerns about O.B.'s challenges in school and the lack of communication and assistance from teachers. Particularly in English, the Parents considered homeschooling him in English if the teacher was not going to work with O.B. and make accommodations for him. The Parents attached Dr. Beck's March 16, 2021 letter recommending a 504 plan and asked that O.B. receive accommodations given that his ADHD was interfering with his education.

4.19    Mr. Johnson arranged a meeting and added Assistant Principal Jon Iverson to the email thread. However, Mr. Johnson refused to implement a 504 plan and put the onus back on the Parents to initiate support for O.B.

4.20    On March 25, 2021, O.B. and his Parents met with Mr. Johnson, again requesting a 504 plan for O.B. Despite having had a 504 plan implemented at his prior district, the history of teacher concerns, multiple requests from family, and the formal evaluation and letter from Dr. Beck, Mr. Johnson unilaterally determined that O.B. did *not* need a 504 plan, since - according to him - O.B.'s grades were "not that bad."

COMPLAINT FOR DAMAGES AND JURY
DEMAND – 11

**Cedar Law PLLC**
113 Cherry Street PMB 9564
Seattle, WA 98104-2205
(206) 607-8277
Fax (206) 237-9109

4.21 Following the meeting, Mr. Johnson sent an email to the Parents, O.B.'s teachers, and other School administrators that starting on March 29th, O.B. would be transitioning from virtual to in-person learning. Approximately five minutes later, O.B.'s science teacher, Mr. Hunter, responded to the email thread asking for the status of O.B.'s 504 accommodations. No one from the District responded.

4.22 On March 29, 2021, O.B. returned to in-person learning without a 504 plan. Not surprisingly, he continued to struggle following instructions and with completing assignments.

4.23 On June 21, 2021, the Parents emailed O.B.'s STEM teacher, Ms. Taylor, asking about 504 accommodations. The Parents did not receive a response.

4.24 O.B. did not receive any disability accommodations from the District for the remainder of the year. Additionally, Mr. Johnson only checked in with O.B. once, approximately three weeks after the meeting with O.B.'s parents. No one from the District reached out to the Parents regarding teacher observations, O.B.'s progress, or a 504 plan. The District never implemented a 504 plan during the 2020-2021 school year.

4.25 In September 2021, O.B. began 8th grade at Mountainside Middle School.

COMPLAINT FOR DAMAGES AND JURY
DEMAND – 12

**Cedar Law PLLC**
113 Cherry Street PMB 9564
Seattle, WA 98104-2205
(206) 607-8277
Fax (206) 237-9109

4.26   Just like the prior year, the District never followed up with the Parents or O.B. regarding a 504 plan or any evaluations made by O.B.'s teachers from the previous school year.

4.27   In an October 25, 2021, email with O.B.'s 8th grade English teacher, Ryan Henderson, the mother explained O.B.'s difficulties focusing and explained their ongoing efforts to obtain a 504 plan.

4.28   During the fall of 2021, O.B. was irritable and moody and his mother noted to Dr. Beck that he was struggling with writing.

4.29   O.B. continued to struggle in class. He would ask for help or clarification in-person or through email and was often ignored. He became frustrated. He would ask for more time to complete assignments and when those requests were denied and O.B. received penalties for late assignments – O.B. became more and more overwhelmed and helpless. He felt as if none of the adults at school were listening to him.

4.30   O.B. had a lot of challenges in English. He struggled with non-fiction and overall, he had difficulty completing the assignments.

4.31   His anxiety in English was heightened, given that the English teacher, Ryan Henderson, forced students to read their assignment grades out loud. Students would grade other students' assignments. Then, the assignment would be handed

COMPLAINT FOR DAMAGES AND JURY
DEMAND – 13

**Cedar Law PLLC**
113 Cherry Street PMB 9564
Seattle, WA 98104-2205
(206) 607-8277
Fax (206) 237-9109

back to the student. Then, each student was asked to read their grade out loud so that Mr. Henderson could make note of the grade. This happened on a weekly basis. Given his poor grades, the publicizing of his poor performance in English heightened O.B.'s dread of school, especially since he was struggling in a class with no learning supports.

4.32    At the same time, when he would ask for help in English, the teacher, Mr. Henderson would often ignore his raised-hand or would just repeat the same instructions that were written, making little effort to ensure that O.B. understood the assignment.

4.33    In the absence of a 504 plan, O.B. had no recourse to counter his teachers' refusal to accommodate his academic struggles.

4.34    O.B told his Parents that his assignments were too difficult and that he felt discouraged because he would run out of time to complete them.

4.35    On top of his academic struggles, students began bullying O.B.

4.36    Because O.B. was not receiving support from the District, his Parents and his sisters had to assist him with his assignments for him to complete them on time.

4.37    Two of his teachers, Mr. Hunter (7th grade science teacher), and Chris Weiland (8th grade science teacher) reported that O.B. was struggling to grasp

COMPLAINT FOR DAMAGES AND JURY
DEMAND – 14

**Cedar Law PLLC**
113 Cherry Street PMB 9564
Seattle, WA 98104-2205
(206) 607-8277
Fax (206) 237-9109

instructions and complete timely assignments. They suggested that he would benefit from accommodations such as those provided in a 504 plan, but the administration continued to refuse to take any action.

4.38    On November 17, 2021, Dr. Beck's office faxed the District a second request to implement a 504 plan. The District did not follow up with the Parents or O.B. about this request.

4.39    Given all of the above, there is a pattern and practice of the Mead School District of resisting requests for 504 evaluations and plans for its students that took place with respect to O.B. and other children in the district.

4.40    The District's ongoing refusal despite multiple requests from O.B., parents, and his treating providers to implement a 504 plan resulted in O.B. continuing to struggle in school, both academically and emotionally.

4.41    About a week before the 2021 winter break, O.B. told his Parents that he hated school, that he did not want to go until he had adequate support. His Mother promised she would follow up again with the District and encouraged him to finish out the semester.

4.42    On the evening of Sunday, January 9, 2022, O.B.'s Parents went to pick up dinner for the family at a local burger shop. On the way out the door, they reminded O.B. that he had schoolwork to finish.

COMPLAINT FOR DAMAGES AND JURY
DEMAND – 15

**Cedar Law PLLC**
113 Cherry Street PMB 9564
Seattle, WA 98104-2205
(206) 607-8277
Fax (206) 237-9109

4.43   Almost instantly, O.B.'s mood changed, and he was overcome by the dread of having to return to school where he was unsupported and failing. In that moment, he felt that he simply could not take it anymore.

4.44   O.B. went up into his Parents' room, accessed the gun that his family kept safely stored and unloaded in the Parents' bedroom.

4.45   O.B. then loaded the gun and shot himself through the left temple.

4.46   Psychological records from the hospital detail that O.B. saw a flash of light before everything went dark.

4.47   O.B.'s sister, Plaintiff Gracie Boe, was in the house at the time. When O.B. pulled the trigger, she heard the gunshot and heard O.B. scream her name and shout that he had just shot his eyes out. She ran to find O.B. with blood pouring from his head around his eyes.

4.48   Gracie called her mother shrieking saying she had to call 911 but did not explain to the Parents why. She said the Parents needed to come home immediately. She then called 911 and the paramedics arrived just before the Parents got home. By putting pressure on his wounds, Gracie likely saved her brother's life that evening.

4.49   In a state of shock, Gracie tried to help O.B. and clean up the pool of blood around him. The images of her brother continue to burn in her mind today.

COMPLAINT FOR DAMAGES AND JURY
DEMAND – 16

4.50   When the Parents arrived at the house, they were immediately overcome by an awful smell, as if something in the house was burning. When the Father first saw O.B.'s face, it looked like he had burned it. Gracie shouted that he had shot himself. The Parents were overcome with emotion.

4.51   The first thing O.B.'s Parents recall him saying to them after he shot himself was that he did not want to go back to school and he did not want to be alive anymore.

4.52   Law enforcement warned the Parents not to go into their bedroom. The Mother, Plaintiff Karla Boe, wandered around the house in a state of shock thinking it was all just a horrible dream.

4.53   O.B. was taken to the hospital to be treated. The doctors soon realized that the gunshot missed O.B.'s brain, but severed his optic nerve, leaving him permanently blind.

4.54   When O.B. and his Parents left for the hospital, Plaintiff Gracie Boe called her older sister to come over, so she was not alone. Gracie, in an attempt to distract herself from the trauma she had just endured, spent hours trying to clean up the blood that was splattered all over the floor, cupboards, the stairs, and the walls.

4.55   O.B. underwent extensive surgery and treatment over the next few weeks. He had severe pain in his eyes and head.

COMPLAINT FOR DAMAGES AND JURY
DEMAND – 17

**Cedar Law PLLC**
113 Cherry Street PMB 9564
Seattle, WA 98104-2205
(206) 607-8277
Fax (206) 237-9109

4.56    In Dr. Beck's notes of conversations with O.B. and his Parents, following the attempted-suicide show that O.B. had ongoing problems with mood reactivity centered around school-related issues. Additionally, Dr. Beck noted that O.B. vocalized he had difficulties in several classes with several teachers who were not supportive of him.

4.57    On February 9, 2022, the District psychologist requested evaluation papers regarding O.B.'s blindness and his mental health.

4.58    On February 23, 2022, Dr. Beck sent the District O.B.'s ADHD and anxiety diagnosis and the accommodations letters he and previously sent requesting the 504 plan.

4.59    The District set up a special education meeting that took place on March 17, 2022. Finally, the District implemented a special education learning support plan for O.B., although only for his vision impairment and not for his ADHD or mental health issues following his attempted suicide and resulting blindness.

4.60    When O.B. finally returned to school in Mead, he was subjected to disability-related bullying victimizing his blindness. For example, a student at his table threw peas and carrots at him. When the student would not stop, O.B. threw the food back in the direction of the student. However, only O.B. – newly blind and still hating school – was reprimanded. The very next day, that same student came

COMPLAINT FOR DAMAGES AND JURY
DEMAND – 18

**Cedar Law PLLC**
113 Cherry Street PMB 9564
Seattle, WA 98104-2205
(206) 607-8277
Fax (206) 237-9109

and shoved O.B., but the District took no action to address the bullying.

4.61    The District treated O.B. negatively as punishment for his suicide attempt, further victimizing him in a discriminatory fashion for the mental health issues he had been experiencing, which the District had created.

4.62    Ultimately, O.B. transferred to the Washington State School for the Blind (WSSB) in the fall of 2022, a residential program in Vancouver, Washington. The WSSB Psychologist noted with surprise that O.B.'s IEP did not address his ADHD or mental health concerns. The Parents pointed out that this was an ongoing issue that the District failed to address. WSSB ultimately remedied that omission.

4.63    O.B., his sister Gracie Boe, and his Parents have suffered immensely from the failures of the District.

4.64    O.B. is now permanently blind and diagnosed with post-traumatic stress disorder (PTSD) as a result of the suicide attempt and his resulting blindness. He continues to struggle with depression and anxiety as a result. He still sees Dr. Beck for psychiatry and medication management and sees Dr. Pamela Clark for counseling.

4.65    O.B. has verbalized the lack of support he felt from the District and his teachers, who penalized him instead of providing him with assistance or accommodations.

COMPLAINT FOR DAMAGES AND JURY
DEMAND – 19

**Cedar Law PLLC**
113 Cherry Street PMB 9564
Seattle, WA 98104-2205
(206) 607-8277
Fax (206) 237-9109

4.66    His sister, Gracie, has been diagnosed with PTSD because of the trauma from hearing the gunshot and finding O.B. just seconds after his attempted suicide. She experiences moments where she still hears the gunshot and can still envision the blood. That image of her brother forever cemented in her mind has impacted her mental health. Her anxiety is still quite high, and she is working to cope and treat the trauma.

4.67    Karla Boe, O.B.'s mother, is also diagnosed with PTSD and sought mental health counseling following O.B.'s attempted suicide.

4.68    Karla, Gabriel, and Gracie were unsure whether O.B. would survive his attempted suicide. They have supported and cared for his recovery, both mental and physical, since his attempted suicide. This has come with many challenges, both emotionally and financially.

4.69    When the District failed to provide O.B. with the support he needed, the whole family paid the price for it.

## IV.    CAUSES OF ACTION

A.    **First Cause of Action: Disability-Based Discrimination Pursuant to Title II the Americans with Disabilities Act (ADA) (42 U.S.C. § 12132)**

5.1    Plaintiff O.B. re-alleges and incorporates herein the preceding paragraphs of this Complaint as though set forth in full.

COMPLAINT FOR DAMAGES AND JURY
DEMAND – 20

5.2    O.B. is an individual with disabilities. His disabilities substantially limits the major life activities of learning and concentrating. Accordingly, Plaintiff is an individual with disabilities under the American with Disabilities Act ("ADA"). 29 U.S.C. § 705(20); 42 U.S.C. § 12102(1); 34 C.F.R. § 104.3(j).

5.3    Defendant discriminated against Plaintiff O.B. solely based on his disabilities in violation of the ADA Title II, 42 U.S.C. § 12132, by *inter alia:* repeatedly refusing to engage in the federally-mandated evaluation process to determine what disability accommodations Plaintiff O.B. required and failing to provide Plaintiff O.B. with learning supports.

5.4    At all relevant times, Defendant has been a place of public accommodation as defined under ADA Title II, 42 U.S.C. § 12131(1).

5.5    As a direct and proximate cause of Defendant's discrimination, Plaintiff O.B. has suffered damages in an amount to be proven at trial.

**B.    Second Cause of Action: Disability-Based Discrimination in Violation of Section 504 of the Rehabilitation Act of 1973 (29 U.S.C. § 794)**

6.1    Plaintiff O.B. re-alleges and incorporates herein the preceding paragraphs of this Complaint as though set forth in full.

6.2    With respect to District's academic and other programs, O.B. is a qualified individual with disabilities within the meaning of Section 504 of the

COMPLAINT FOR DAMAGES AND JURY DEMAND – 21

**Cedar Law PLLC**
113 Cherry Street PMB 9564
Seattle, WA 98104-2205
(206) 607-8277
Fax (206) 237-9109

Rehabilitation Act of 1973 (29 U.S.C. § 794), in that he has mental impairments that substantially limit his ability to perform one or more major life activities, including learning and concentrating, and he meets the essential eligibility requirements for the receipt of educational and other services provided by the District. 29 U.S.C. § 705(20); 42 U.S.C. § 12102(1); 34 C.F.R. § 104.3(j).

6.3     Section 504 of the Rehabilitation Act, 29 U.S.C. § 794 bars all federally funded entities (governmental or otherwise) from discriminating on the basis of disability.

6.4     The District receives federal financial assistance and is covered by Section 504.

6.5     The District enjoys no absolute, qualified, Eleventh Amendment or other immunity with respect to the Plaintiff's claim under Section 504 of the Rehabilitation Act.

6.6     By failing to provide O.B. the academic and related modifications (or reasonable accommodations) to which he is entitled, the District violated the non-discrimination mandate set forth in Section 504 of the Rehabilitation Act and its implementing regulations. 29 U.S.C. § 794; 34 C.F.R. §§ 104.1 *et seq*.; 34 C.F.R. §§ 104.31-104.36.

COMPLAINT FOR DAMAGES AND JURY
DEMAND – 22

6.7     The District was aware that O.B. experienced emotional difficulties and was seeing a psychiatrist because of his disabilities, was negatively affected by his bad grades, needed support to be academically successful, required parental and sibling assistance with academic failures or concerns, and was taking medication.

6.8     Although District officials were aware of O.B.'s ongoing academic failures, the District failed to offer any meaningful intervention to actually instruct or proactively assist O.B. to make academic and emotional progress as required by Section 504 and the ADA.

6.9     Providing O.B. the academic and related modifications (reasonable accommodations) to which he was entitled would not have constituted an undue burden or hardship for the District.

6.10    From 2019 to 2022, the District knowingly, deliberately, and wrongfully discriminated against O.B. in violation of Section 504 (b) by failing to evaluate him for a 504 plan and by denying him an education in the regular educational environment with the use of appropriate accommodations and modifications in violation of Section 504. 34 C.F.R. §§ 140.4, 104.35.

6.11    From 2019 to 2022, the District knowingly, deliberately, and repeatedly failed to provide O.B. with an educational program and related aids and services designed to meet his needs as adequately as the needs of non-disabled students of

COMPLAINT FOR DAMAGES AND JURY
DEMAND – 23

**Cedar Law PLLC**
113 Cherry Street PMB 9564
Seattle, WA 98104-2205
(206) 607-8277
Fax (206) 237-9109

the District in violation of Section 504. 34 C.F.R. §§ 104.4, 104.3, each of which authoritatively construe the statute.

6.12    From 2019 to 2022, the District knowingly, deliberately, and repeatedly failed to provide O.B. with the programs and services that would have resulted in significant learning and conferred a meaningful benefit to O.B.

6.13    During the duration of O.B.'s enrollment in the District, reasonable accommodations necessary to provide O.B. with meaningful access to education were available to the District but were never offered or provided.

6.14    Numerous District administrators, officials, and employees had the authority and the responsibility to rectify the District's failures, as set forth above, but wrongfully failed to take appropriate corrective actions.

6.15    At all relevant times, the Defendant District had knowledge it was substantially likely that their acts and failures to act, as set forth in the preceding paragraphs of this Complaint, would harm O.B.'s federally protected right to be free from discrimination, and to have meaningful access to education and reasonable accommodation with respect to his educational disability. Despite this knowledge, the District failed to act upon that likelihood, thereby causing severe and permanent injury to O.B.

COMPLAINT FOR DAMAGES AND JURY
DEMAND – 24

6.16    The District's deliberate indifference to O.B.'s federally protected rights, as aforesaid, resulted in discrimination against O.B. and denied him reasonable accommodations for his educational disabilities and meaningful access to public education in Washington, thereby entitling Plaintiff O.B. to recover special and general damages from the District under Section 504 of the Rehabilitation Act in an amount to be shown at trial.

6.17    The District's deliberate indifference in violating O.B.'s rights under Section 504 was a substantial factor in causing O.B. to suffer irreversible personal injury and harm, including profound and irreparable injury, and total blindness.

## C.    Third Cause of Action: Negligence

7.1    Plaintiff O.B. re-alleges and incorporates herein the preceding paragraphs of this Complaint as though set forth in full.

7.2    The District owed Plaintiff O.B. numerous duties. Defendant's duties include, but are not limited to: 1) the duty to protect students in its custody from foreseeable harm; (2) the duty to anticipate harm which may reasonably be anticipated and to then take precautions to protect students in its custody from such harm; (3) the duty to respond appropriately once aware that its students are exhibiting signs of emotional and behavioral distress and make appropriate referrals;

COMPLAINT FOR DAMAGES AND JURY
DEMAND – 25

(4) the duty to protect its students' ability to maintain a healthy educational environment; and (5) the duty to properly ensure its employees are properly trained to perform their duties.

7.3     The District negligently breached each of the above duties. Those breaches include, but are not limited to: (1) the failure to protect Plaintiff O.B. from foreseeable harm and to anticipate foreseeable harm of students in its custody; (2) the failure to respond appropriately when Plaintiff O.B. exhibited signs of emotional and behavioral distress duty to protect its students from foreseeable harm; (3) the failure to maintain a healthy educational environment; (4) the failure to exercise reasonable care in ensuring employees were properly trained to perform their duties owed to Plaintiff O.B.; and (5) the failure to properly train and/or supervise employees.

7.4     As a direct and proximate result of its breaches of duty, Plaintiffs suffered damages set forth herein in an amount to be proven at trial.

**D.     Fourth Cause of Action: Bystander Negligent Infliction of Emotional Distress**

8.1     Plaintiffs Gracie Boe, Karla Boe, and Gabriel Boe, re-allege and incorporate herein the preceding paragraphs of this Complaint as though set forth in full.

COMPLAINT FOR DAMAGES AND JURY DEMAND – 26

8.2    Washington recognizes a cause of action for negligent infliction of emotional distress is recognized where a family member "witnesses the victim's injuries at the scene of an accident shortly after it occurs and before there is a material change in the attendant circumstances." *Colbert v. Moomba Sports, Inc.*, 163 Wn.2d 43, 55, 176 P.3d 497, 503 (2008) (citing *Hegel v. McMahon*, 136 Wn.2d 122, 126, 960 P.2d 424, 426 (1998)).

8.3    Defendant negligently inflicted emotional distress upon Plaintiffs, Gracie Boe, Karla Boe, and Gabriel Boe who were bystanders to O.B.'s attempted suicide.

8.4    The attempted suicide was foreseeably caused by O.B.'s impulsivity and school-related anxiety, given that the District had created a toxic educational environment for O.B. by failing to provide reasonable accommodations and supporting him.

8.5    Plaintiff Gracie Boe was in the house at the time O.B. attempted suicide. She heard the gunshot and moments after she found O.B. with blood gushing from his head.

8.6    Plaintiffs Karla and Gabriel Boe arrived minutes after O.B. attempted suicide. From Gracie calling them, they knew they needed to come home immediately, but were not prepared for the burning smell, which they later learned

COMPLAINT FOR DAMAGES AND JURY
DEMAND – 27

**Cedar Law PLLC**
113 Cherry Street PMB 9564
Seattle, WA 98104-2205
(206) 607-8277
Fax (206) 237-9109

was the smell of their son's skin, nor were they prepared to see their only son with a gunshot wound through his eyes.

8.7    In breaching its duties to the Plaintiffs to respond appropriately to its students' exhibiting signs of emotional and behavioral distress and to property train its employees to identify and deal with students in emotional distress, the District negligently inflicted emotional distress upon the bystander Plaintiffs, directly and proximately causing Plaintiffs to suffer the damages set forth herein in an amount to be proven at trial.

### E.    Fifth Cause of Action: Loss of Consortium

9.1    Plaintiffs, Karla and Gabriel Boe, re-allege and incorporate herein the preceding paragraphs of this Complaint as though set forth in full.

9.2    Plaintiffs, Karla and Gabriel Boe, are the natural parents of O.B. and have supported him since birth.

9.3    As a direct and proximate result of the Defendant's tortious conduct, Plaintiffs have suffered a loss of consortium with their son, resulting in general and special damages in an amount to be proven at trial.

### V. PRAYER FOR RELIEF

10.1    Plaintiffs request relief as follows:

COMPLAINT FOR DAMAGES AND JURY DEMAND – 28

10.1.1 For judgment against Defendants for state and federal civil rights violations; negligence; bystander negligent infliction of emotional distress; and loss of consortium;

10.1.2 For judgment against Defendant for all general and special damages in amounts to be proved at the time of trial;

10.1.3 For an award of costs and attorney's fees under 42 U.S.C. § 12205, 29 U.S.C. § 794 and any other applicable provisions of federal or state law; and

10.1.4 For such other and further relief as the Court may deem just and equitable.

## VI. RESERVATION OF RIGHTS

11.1    Plaintiffs reserve the right to assert additional claims as may be appropriate following further investigation and discovery.

## VII. JURY DEMAND

12.1    Under the Federal Rules of Civil Procedure, Plaintiffs demand that this action be tried before a jury.

//

//

COMPLAINT FOR DAMAGES AND JURY
DEMAND – 29

**Cedar Law PLLC**
113 Cherry Street PMB 9564
Seattle, WA 98104-2205
(206) 607-8277
Fax (206) 237-9109

1

2

DATED this 3rd day of November, 2023.

3

s/Lara R. Hruska
Lara Hruska, WSBA No. 46531
Sydney Bay, WSBA No. 56908
CEDAR LAW PLLC
113 Cherry Street PMB 9564
Seattle, Washington 98104-2205
Telephone: (206) 607-8277 Fax: (206) 237-9101
E-mail: lara@cedarlawpllc.com
            sydney@cedarlawpllc.com
*Attorneys for Plaintiffs*

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

COMPLAINT FOR DAMAGES AND JURY
DEMAND – 30